IN THE IOWA DISTRICT COURT FOR CLINTON COUNTY

| | |
|---|---|
| **EAGLE RISE DEVELOPMENTS L.L.C.,**<br><br>Plaintiff,<br><br>v.<br><br>**NATIONWIDE MUTUAL INSURANCE COMPANY,**<br><br>Defendant. | Case No. _____<br><br><br>**PETITION AT LAW AND JURY DEMAND** |

**COMES NOW** Eagle Rise Developments, L.L.C. (hereinafter referred to sometimes as "Plaintiff"), by and through its undersigned attorney, James C. Larew, Larew Law Office, Iowa City, Iowa, and for its Petition at Law and Jury Demand, and hereby states as follows:

### INTRODUCTION

1. This is an action by Plaintiff against Nationwide Mutual Insurance Company ("Defendant") pursuant to claims for insured losses suffered by real property located 2810 N. 4th St Clinton, Iowa, caused by the Derecho storm that occurred on August 10, 2020.

### PARTIES

2. Plaintiff, an Iowa limited liability company, is located 3639 53rd Ave, Bettendorf, Iowa, Scott County, Iowa. Its sole owner is Alexander Wilbur. Its agent is Troy Wilbur. Plaintiff owns property located at 2810 N. 4th St, Clinton, Iowa (sometimes, hereafter, "Property").

1

1. Defendant Nationwide Mutual Insurance Company (sometimes "Nationwide") is licensed in the State of Iowa; it issued the insurance Policy to Plaintiff that is the subject of this lawsuit. That Policy promises indemnification for losses caused by wind storms.

## JURISDICTION AND VENUE

2. Jurisdiction is proper in the Iowa District Court pursuant to Iowa Code section 602.6101.

3. Venue is proper in Clinton County pursuant to Iowa Code sections 616.2 (injuries to real property), 616.7 (place of contract), 616.10 (insurance companies), and 616.18 (personal injury or damage actions), because this case concerns Plaintiff's right to obtain monetary compensation for property damages and for wrongful conduct arising out of a contractual insurance relationship; the losses insured against occurred in Clinton County, Iowa.

## MATERIAL FACTS

4. The Property is comprised of a former school building situated on approximately 28 acres of land, all of it subject to development plans by Plaintiff. Under those plans, and in accordance with Plaintiff's re-zoning of the land consistent with those plans, Plaintiff intended to construct the following:

- The school building would be re-purposed to include residential units for assisted living and condominium units, a fitness center and shared office spaces.

- The surrounding wooded land would be developed into a subdivision consisting of 35 residential lots.

5. Shortly after purchasing and taking possession of the Property, in April 2020, and after securing a Policy of insurance from Nationwide to cover Plaintiff's intended

development of the Property, Plaintiff's agent, Troy Wilbur, occupied a portion of the building by moving his office machines and equipment into its rooms.

6. On August 10, 2020, a severe wind storm, meteorologically known as a "Derecho," with wind speeds that exceeded 140 mph in many areas, struck a large swathe of the State of Iowa, including Plaintiff's insured Property in Clinton County.

7. In the storm's aftermath, Plaintiff recognized that the Property had been badly-damaged, particularly with respect to the building's roof, significant interior water intrusions (causing damages to ceilings, floors, walls, and electrical systems), and to trees located on the 28 acres that surrounded the former school.

8. Plaintiff immediately reported the damage claim to Nationwide. The insurer, in turn, established Claim No. 921767-GK.

9. Having received notice of the claim, promptly, Nationwide then failed, initially, to assign trained and competent adjusters who could come to the Property immediately to assess the damage so that a shared understanding with its insured could be made as to the full scope and cost of repairs that Nationwide would indemnify.

10. Notwithstanding the initial absence of a comprehensive adjustment of the loss, on September 17, 2020, Nationwide's initial determination of the loss was $430,339.26, less a $5,000.00 deductible. But that amount, which, in any event, was significantly less than Plaintiff's own valuation of the loss (approximately $1.3 million) was not paid until October 20, 2020. Nevertheless, relying on Nationwide's own initial loss assessment and its promises of indemnification, Plaintiff, a licensed contractor, proceeded to hire work crews and purchase materials necessary to make both temporary and permanent repairs to the storm-damaged premises.

11. Starting immediately after the Derecho, Plaintiff started to mitigate the extensive damage to the building's roof by hiring crews to repair gaping holes in the roof's surface. Some workers placed sandbags and tarps on the building's roof to reduce leaking. Others affixed tarps and other temporary materials on the damaged roof.

12. In addition, through its agent, Troy Wilbur, Plaintiff also organized workers to clean interior areas of the building that had suffered water intrusions through the leaking roof. Others tended to repairing water-damaged interior spaces.

13. In addition, Mr. Wilbur assigned crews to attend to damaged trees, with as many as 98 such trees that had been felled or badly damaged by the winds.

14. When, at the end of August, 2020, Nationwide named a person, James Robinson, to represent the insurer in adjusting the claim, he informed Plaintiff's agent, Mr. Wilbur, that Nationwide did not have access to an engineer who could assess the damage promptly.

15. Mr. Robinson agreed that Nationwide would compensate an engineer retained by Plaintiff to evaluate the roof damage. Mr. Wilbur, in response, retained the engineer who performed the damage assessment. Nationwide then, for more than a year, failed to pay the fee.

16. Approximately nine months after Nationwide had valued the Policy-covered loss at more than $430,000, it significantly reduced its valuation of the loss by nearly $60,000, to $373,032.62, based on its new interpretation of its own Policy. This caused Plaintiff to suffer damage due to its earlier reliance upon the insurer's initial higher loss valuation. When Plaintiff's agent, Mr. Wilbur, objected to the new Policy interpretation, and the resulting reduction in indemnification payment, Nationwide's representative became

extremely verbally abusive to and, in fact, slandered Mr. Wilbur.

17. The harms caused by Nationwide's changes of position were felt by Plaintiff in a number of ways.  For example, Mr. Robinson had initially instructed Plaintiff, through its agent, Mr. Wilbur, that, under the Policy, if certain repair and restoration work were to be performed to the roof, and certain repairs were to be performed to the building's interior, costs for the same would be indemnified by Nationwide.  The work was performed.  Then, Nationwide refused to pay for the full costs of repair.

18. Similarly, Defendant, through Nationwide's representative(s), agreed, initially, that tree repair and removal was covered under the Policy.  Plaintiff, in response, had hired crews to clean up tree debris, at a cost of nearly $40,000 (with a remainder of approximately $100,000 tree debris removal yet to be completed).  Then, Defendant, through Mr. Robinson, subsequently changed its mind and notified Plaintiff that tree debris removal costs were not covered by the Policy.

19. Nationwide's failure to indemnify Plaintiff fully for the losses suffered by the insured Property, combined with the insurer's changes in position, have caused significant delays in Plaintiff's ability to carry through with its project and to suffer damages as a consequence.

20. It has been difficult to attract qualified sub-contractors to demonstrate an interest in work necessary for the repair and restoration of the building and grounds when Plaintiff's insurer has been so slow to make loss and coverage determinations—and, then, when made, to change its mind.

21. As a result of Nationwide's delays and denials in payments and remediation, the City of Clinton filed suit against Plaintiff for failure to abide by the International Property Maintenance Code regarding the damages to the roof of the Premises. Eagle Rise was found liable for failure to

properly and timely repair the roof of the Premises, as a result of Defendant Nationwide's failure to make proper indemnification to Plaintiff Eagle Rise regarding the Derecho damages to the Premises' roof. This resulted in a judgment against Plaintiff for damages.

22. As a result of this misconduct, one involving Nationwide's breaches of its insurance contract, its misrepresentations of coverage, as well as a breach of its duty of good faith and fair dealing, Plaintiff has suffered direct and consequential damages.

## COUNT I

## BREACH OF CONTRACT

23. Plaintiff re-plead paragraphs 1 through 22 as if fully set forth herein.

24. The Policy constituted a valid and legally-enforceable contract between Plaintiff and Defendant.

25. Plaintiff paid all Policy premiums and renewed the Policy to cover the date of the Derecho.

26. Defendant breached the Policy by delaying indemnification payments for both Actual Cash Value and Replace Cost Value of the losses.

27. Defendant breached the Policy with Plaintiff by denying full indemnification of Replacement Cost Value damages resulting from the covered Derecho storm event.

28. Defendant further breached the Policy by denying indemnification for business and other related losses covered by the Policy, such as business income losses for Plaintiff's business.

29. As a direct and proximate result of these breaches, Plaintiff has been unable to fully restore the Property to its pre-loss condition for almost two years.

30. As a direct and proximate result of these breaches, Plaintiff has suffered direct and consequential damages, including, but not limited to: loss of past and future income;

damaged imposed by the City of Clinton; expert witness fees, court costs, and attorneys' fees.

**WHEREFORE** Plaintiff pray that a judgment be entered by this Court in its favor against Defendant, for all amounts due and owing to it, as provided by law, including, but not limited to, contractually-obligated coverage payments, consequential damages and punitive damages arising from Defendant's improper denial and/or delay of the claim and its processes thereafter, as well as fines and judgments imposed upon Plaintiffs by the Iowa District Court.

## COUNT II

## NEGLIGENT MISREPRESENTATION

31. Plaintiff re-pleads paragraphs 1 through 22 as if fully set forth herein.

32. Nationwide made certain statements, through its duly authorized agent, that particular losses would be indemnified, but concerning which losses Nationwide later denied. Therefore, Nationwide's statements were either false, initially, or were made in a grossly negligent or false manner concerning a very important fact related to the Policy's coverage.

33. Nationwide's representatives are in the business of providing information regarding losses to insureds on which others rely.

34. The statements thus far have been retracted, and are false.

35. Nationwide knew or should have known that the statements were false or grossly negligent.

36. Nationwide made these misrepresentations knowing that Plaintiff would rely upon them.

37. Plaintiff reasonably relied on those misrepresentations in making repair decisions.

**Attachment A - 007**

38. Plaintiff was financially injured by relying on the misrepresentations when it incurred expenses that Nationwide later refused to pay.

**WHEREFORE** Plaintiff prays that a judgment be entered by this Court in its favor against Defendant, for all amounts due and owing to Plaintiff, as provided by law, including, but not limited to: contractually-obligated coverage payments; consequential damages, including fines imposed by the City of Clinton and upheld by the District Court for Clinton County; loss of past and future income; and punitive damages arising from Defendant's improper denial and/or delay of the claim and its processes thereafter.

## COUNT III
## BAD FAITH

39. Plaintiff re-pleads paragraph 1 through 21, as if fully set forth herein.

40. The inherently unequal bargaining power between insurer and insured, regarding an insurance contract, which is a contract of adhesion, creates the necessary duty and obligation of the Insurer to act only in good faith, with respect to the manner in which it performs its duties under the contract of insurance.

41. Defendant has breached this duty by denying coverage and all payments rightfully owed to Plaintiff, which obligated payments amounts arose from the losses incurred on August 10, 2020.

42. There is no reasonable basis, either in fact or at law, for Defendant to have denied any portion of the claim made by Plaintiff for the losses covered by the Policy, as described herein, up to the Replacement Cost Value of the goods and services necessary to place the Premises in a comparable pre-loss condition, as well as business income losses incurred, but no more than the limits of the Policy described herein.

43. Defendant knew, or had reason to know, that its delays, denials, and refusals to, first, accept Plaintiff's claim fully, and/or, second, to pay in full the amount of damages resulting from the claimed event, which was made by Plaintiff appropriately under the provisions of the Policy.

44. The duty of good faith requires that Defendant use all available information to evaluate claims, and to promptly and properly investigate the merits of any claim.

45. Defendant has failed to do so, and breached its duty of good faith by not using all evidence and information provided to them in order to evaluate Plaintiff's claims.

46. Defendant's breach of its duty of good faith was a proximate cause of damage to the Plaintiff.

47. As a direct result of Defendant's breach of duty of good faith, Plaintiff has been unable to obtain the proper payments under its insurance contract with Defendant, and has been required to hire attorneys to seek what is rightfully, legally, and contractually owed to the Plaintiff under the Policy.

**WHEREFORE** Plaintiff prays that a judgment be entered by this Court in its favor against Defendant, for all amounts due and owing to Plaintiff, as provided by law, including, but not limited to: contractually-obligated coverage payments; consequential damages; loss of past and future income; and punitive damages arising from Defendant's improper denial and/or delay of the claim and its processes thereafter.

## JURY DEMAND

**COMES NOW** Plaintiff and hereby demands a trial by jury of its peers of all matters contained within this Petition and Law and under the laws of the State of Iowa.

Respectfully submitted,

/s/ *James C. Larew*

James C. Larew AT0004543
LAREW LAW OFFICE
504 East Bloomington Street
Iowa City, Iowa 52245
Telephone: (319) 337-7079
Facsimile: (319) 337-7082
Email: james.larew@larewlawoffice.com
**ATTORNEY FOR PLAINTIFF**